IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **JAMES JONES**, | **CIVIL ACTION** |
| Plaintiff, | |
| *v.* | **NO. 20-5270-KSM** |
| **SUPERINTENDENT SORBU, et al.**, | |
| Defendants. | |

## MEMORANDUM

**MARSTON, J.**                                                                                                       **February 3, 2021**

In this case, *pro se* prisoner James Jones brings suit under 42 U.S.C. § 1983 against a phalanx of prison officials, alleging violations of his First, Eighth, and Fourteenth Amendment rights.  (Doc. No. 5.)  Presently before the Court is Jones's motion for a preliminary injunction and/or a temporary restraining order.  (Doc. No. 6.)  In his motion, Jones alleges various abuses by prison officials, but does not indicate what form of relief he seeks.  (*See generally id.*)  Defendant Superintendent Jamie Sorber[1] filed an opposition to Jones's motion, in which she argued that the motion should be denied because Jones had not established a likelihood of success on the merits and because granting Jones relief would not be in the public interest and would result in greater harm to Defendants.  (Doc. No. 14.)  For the reasons that are discussed below, the Court will deny Jones's motion.

---

[1] In Jones's filings, Sorber is variously referred to as "Sorber" (Doc. No. 6 at p. 1), "Sorba" (*id.*; Doc. No. 5 at ¶ 5), and "Sorbu" (Doc. No. 2 at p. 1).  For the purposes of this memorandum, we refer to Sorber by the spelling of her name on the SCI Phoenix website.  *SCI Phoenix*, COR, https://www.cor.pa.gov/Facilities/StatePrisons/Pages/Phoenix.aspx (last accessed Jan. 27, 2020).

1

I.

Jones is a state prisoner currently incarcerated at SCI Phoenix. (Doc. No. 5 at ¶ 2.) He initiated this lawsuit on October 21, 2020 by filing a complaint and an application to proceed *in forma pauperis*. (Doc. Nos. 1–2.)[2] Jones filed his motion seeking a preliminary injunction and/or a temporary restraining order on December 11, 2020. (Doc. No. 6.) In the motion, Jones asserts that "he is in imminent risk of physical harm" and that he is facing "calculated harassment" and "retaliation" for filing prison grievances and court cases. (*Id.* at ¶ 2.) He further states that prison staff are aware of these issues and have failed to intervene. (*Id.*)

Jones does not specifically state what form he would like the injunction to take,[3] but does identify "some of the events" that led him to move for one. (*Id.* at ¶ 3.) Jones alleges eight circumstances that he argues warrant the issuance of a preliminary injunction:

1. After Jones reported a guard-on-inmate assault, several officers threatened to "spray" Jones or write him up, tampered with his food, used racial slurs against him, and falsified reports that he refused his cancer treatment.

2. Guards have exhibited a pattern of harassment and misconduct, such as threatening Jones, depriving him of food, shaking up his food tray, and

---

[2] The operative complaint in this matter is Jones's amended complaint (Doc. No. 5). (*See* Doc. Nos. 10, 15.)

[3] Because we liberally construe Jones's filings, we note that while his motion does not contain a request for specific forms of relief, the proposed order that he filed with it would require Superintendent Sorber to "show cause" why Jones should not be transferred to another prison and guaranteed a parole hearing within 30 days. (Doc. No. 6 at p. 2.) However, absent evidence that Defendants deprived Jones of a federal right, privilege, or immunity, *see* 42 U.S.C. § 1983, this Court has no authority to direct the Pennsylvania Department of Corrections ("Pa. DOC") to change Jones's housing assignment. *See Bell v. Wolfish*, 441 U.S. 520, 546–48 (1979) (holding that courts should afford prison officials "wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security" because prison officials have a better sense of prison needs than judges, and for separation of powers reasons); *Meachum v. Fano*, 427 U.S. 215, 224 (1976) (holding that prisoners do not have a right to be incarcerated in a particular prison); *Zehring v. Sorber*, Civil Action No. 20-3195, 2020 WL 7041759, at *14–15 (E.D. Pa. Dec. 1, 2020) (collecting cases) (relying on *Bell* and cases holding that prisoners do not have a right to a particular prison assignment to conclude that an injunction directing the Pa. DOC to transfer the plaintiff would be inappropriate because "the Court has no authority to direct Pa. DOC to change Plaintiff's housing assignment"). Also, as discussed herein, the United States Constitution does not provide any legitimate claim to parole. *See Greenholtz v. Neb. Penal Inmates,* 442 U.S. 1, 7 (1979).

kicking his cell door.[4]

3. While receiving cancer treatment at Einstein Hospital, Jones received an injection in his penis. Following this injection, he developed painful sores on his penis that have worsened despite the varying treatments attempted by the medical staff at Einstein Hospital and SCI Phoenix. Jones asserts that SCI Phoenix medical staff are now "intentionally" not referring him for outside medical treatment.

4. Jones requested a dental appointment on September 22, 2020 for what he believed was a developing cavity. He has still not been seen by a dentist.

5. As part of his cancer treatment, Jones receives testosterone shots every three months. These shots cause severe hot flashes, but the medical staff has done nothing to treat these side effects.

6. Guards sometimes yell loudly in an inmate housing area about the specifics of Jones's conviction for sexual assault, subjecting Jones to an increased risk of violence from other inmates.

7. Twice, Jones has sent legal documents to the prison law library, along with payment for copies, but the documents were never returned.

8. On November 25, 2020, Jones had a parole hearing. He brought with him a "small packet of documents . . . to support [his] argument why parole should [be] granted and some certificates." The guard escorting him to the hearing searched the papers and found no issue with them. However, when Jones arrived at the search area outside of the hearing room, another guard told him he could not bring the papers in with him. Jones attempted to appeal to the lieutenant who was also stationed outside of the hearing room, to no avail. Both the guard and the lieutenant refused to allow Jones to see the policy that allegedly barred him from bringing paperwork to his parole hearing. Jones was then returned to his cell without meeting with the parole board; Jones had purportedly "been waiting years" to be granted a parole hearing.

(*Id.* at ¶¶ 3–9.)

Because Jones's complaint had not yet been screened or served on Defendants at the time

---

[4] This allegation is contained in the same numbered paragraph as allegation 1 in Jones's motion. (*See* Doc. No. 6 at ¶ 3.) However, because Jones offsets this allegation from allegation 1, and because the alleged guard-on-inmate assault described in allegation 1 took place "on or about September 19th, 2020" but the harassment described in this allegation began "in August but intensified in September," we will treat them as two separate allegations rather than follow Sorber's convention of treating them as a single allegation. (*See id.*; Doc. No. 14 at p. 1.)

Jones filed the instant motion, the Court ordered Jones's motion be served on Defendant Superintendent Jamie Sorber and directed Sorber to respond to the motion. (Doc. No. 7.) Sorber filed her response on January 26, 2021. (Doc. No. 14.) Sorber argues that Jones's motion should be denied because he has not established a likelihood of success on the merits of his claims, has not provided specific details regarding the nature of the injunction he seeks, and because granting him relief would result in greater harm to herself and would not be in the public interest. (*Id.* at p. 3.)

II.

Under Federal Rule of Civil Procedure 65, the court has the power to "grant preliminary injunctions to enjoin harmful conduct." *ASI Bus. Sols., Inc. v. Otsuka Am. Pharm., Inc.*, 233 F. Supp. 3d 432, 437 (E.D. Pa. 2017); *see also* Fed. R. Civ. P. 65(a).[5] Similarly, 18 U.S.C. § 3626 allows the court to grant a preliminary injunction with respect to prison conditions. 18 U.S.C. § 3626(a)(2). "Preliminary injunctive relief is an extraordinary remedy and should be granted only in limited circumstances." *Arrowpoint Capital Corp. v. Arrowpoint Asset Mgmt., LLC*, 793 F.3d 313, 318 (3d Cir. 2015) (quotation marks omitted). "[A] prisoner's request for injunctive relief must 'be viewed with great caution' because of the 'intractable problems of prison administration.'" *Milhouse v. Fasciana*, 721 F. App'x 109, 111 (3d Cir. 2018) (quoting *Goff v.*

---

[5] Jones's motion references Federal Rule of Civil Procedure 60. (Doc. No. 6 at ¶ 1.) However, that Rule deals with relief from a judgment or order; it says nothing about preliminary injunctions. *See generally* Fed. R. Civ. P. 60. We construe Jones's motion to be filed pursuant to Rule 65, which concerns preliminary injunctions and temporary restraining orders. *See generally* Fed. R. Civ. P. 65.

Additionally, Jones moves for a preliminary injunction or a temporary restraining order. (Doc. No. 6 at ¶ 1.) To the extent Jones is requesting the Court issue a temporary restraining order, we note that a temporary restraining order may only be granted if "specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable harm . . . will result to the movant before the adverse party can be heard in opposition . . . ." Fed. R. Civ. P. 65(b)(1)(A); *see also Hope v. Warden York Cnty. Prison*, 956 F.3d 156, 159–60 (3d Cir. 2020). As discussed herein, Jones fails to make the required showing under Rule 65, and his motion for a temporary restraining order will be denied.

*Harper*, 60 F.3d 518, 520 (8th Cir. 1995)).

A party seeking a preliminary injunction must present evidence showing: "(1) a likelihood of success on the merits; (2) that it will suffer irreparable harm if the injunction is denied; (3) that granting preliminary relief will not result in even greater harm to the nonmoving party; and (4) that the public interest favors such relief." *Arrowpoint Capital Corp.*, 793 F.3d at 318–19 (quotation marks omitted). Under this standard, success on the merits must be likely, but need not be more likely than not; irreparable harm must be more likely than not. *Reilly v. City of Harrisburg*, 858 F.3d 173, 179 (3d Cir. 2017). Additionally, "the risk of irreparable harm must not be speculative." *Adams v. Freedom Forge Corp.*, 204 F.3d 475, 488 (2000). If a party fails to establish likelihood of success on the merits and irreparable harm—what the Third Circuit has referred to as the "gateway factors" of this test—then the Court need not consider whether all four factors balance in favor of granting preliminary relief. *See Reilly*, 858 F.3d at 179.

### III.

Like Sorber, we divide Jones's allegations into four general categories: (A) those concerning alleged retaliation and abuse by guards (Allegations 1, 2, and 6), (B) those concerning Jones's medical status (Allegations 3–5), (C) those concerning Jones's legal paperwork (Allegation 7), and (D) those concerning Jones's parole hearing (Allegation 8). (*See* Doc. No. 14 at p. 8.) We address each category in turn.

### A.

We first address Allegations 1, 2, and 6: Jones's claims that he has been subjected to harassment and abuse by guards. As to these allegations, Jones has failed to demonstrate a likelihood of success on the merits or that he will suffer irreparable harm if not granted an injunction.

With respect to Jones's claims in Allegations 1 and 2 that guards have verbally harassed and threatened him, tampered with his food, prevented him from receiving meals, kicked his cell door, and falsified reports about him, we are persuaded by Sorber's argument that Jones has not established a likelihood of success on the merits because a prison investigation failed to substantiate any of Jones's allegations. (*See* Doc. No. 14 at p. 10.) In independently reviewing the investigative report, we find that Jones's version of events is contradicted by the statements of every guard who was interviewed.[6] (*See* Doc. No. 14-1 at pp. 2–3.) Further, Jones undercut his own credibility in the investigation through his assertion that "he was not in fear for his safety" despite his very specific claims that two guards had given him the date, time, and place at which they intended to beat him, that supervisors had no control over these guards, and as a result, Jones wanted to "be given protection." (*Id.* at pp. 2, 8.) Because we find, at this stage, that Jones's Allegations 1 and 2 are uncorroborated and unreliable, we conclude that Jones has not established a likelihood of success on the merits of his claims. Moreover, as Jones himself has said that he does not fear for his safety (*id.* at p. 3), we find that he has not established that he will suffer irreparable harm if not granted an injunction.

As for Allegation 6, Jones fails to establish a likelihood of success on the merits because his claims, as alleged, will fail as a matter of law. Mere verbal threats or taunts, "without more," do not violate the Constitution. *See Dunbar v. Barone*, 487 F. App'x 721, 723 (3d Cir. 2012) (holding that threats that inmate was a "marked man and that his days were numbered" did not

---

[6] While we are persuaded that the investigation report prevents Jones from establishing a likelihood of success on the merits, we are troubled by the fact that prison officials did not review video of the alleged incidents. (*See* Doc. No. 14-1 at p. 2.) Although Jones did not provide specific times at which the alleged harassment occurred in his written and verbal statements to the investigator (*see id.* at pp. 2, 9), nothing prevented prison investigators from asking Jones for that information when they interviewed him. Moreover, the grievance the investigator was considering did provide a specific date and time at which Jones claims he was threatened by two guards. (*Id.* at p. 8.) Video from that date and time may have corroborated or refuted Jones's version of some of the relevant events.

6

state Eighth Amendment claim); *McBride v. Deer*, 240 F.3d 1287, 1291 n.3 (10th Cir. 2001) (holding that threat to spray inmate with mace did not violate Eighth Amendment); *DeWalt v. Carter*, 224 F.3d 607, 612 (7th Cir. 2000) ("Standing alone, simple verbal harassment does not constitute cruel and unusual punishment, deprive a prisoner of a protected liberty interest or deny a prisoner equal protection of the laws."); *Williams v. Bramer*, 180 F.3d 699, 706 (5th Cir. 1999) (the use of racial epithets does not amount to an equal protection violation absent "harassment or some other conduct that deprives the victim of established rights"); *Abuhouran v. Acker*, Civ. A. No. 04-2265, 2007 WL 603045, at *4 (E.D. Pa. Feb. 22, 2007) ("Although derogatory language in reference to plaintiff's race or ethnicity is strong evidence that the conduct in question is racially or ethnically motivated, it alone cannot support an equal protection claim."); *Mugavero v. Town of Kearny*, Civ. A. No. 12-2439, 2013 WL 3930120, at *3 (D.N.J. July 30, 2013) ("[L]ike offensive statements, the display or drawing of offensive imagery does not, on its own, amount to a constitutional violation."). As such, Jones cannot establish a likelihood of success on the merits with regard to Allegation 8, as the guards' alleged conduct, while deplorable, does not violate the Constitution.

Moreover, just as Jones has not established a likelihood of success on the merits related to Allegation 6, he has also not demonstrated that he will suffer irreparable harm if the injunction related to it is not granted. This is because when we consider the irreparable harm prong of the preliminary injunction test, the harm the party seeking the injunction "expects to suffer[] must be legally cognizable harm." *Niagara Mohawk Power Corp. v. Graver Tank & Mfg. Co.*, 470 F. Supp. 1308, 1329 (N.D.N.Y. 1979); *see also Rsch. Found. of State Univ. of N.Y. v. Mylan Pharms., Inc.*, 723 F. Supp. 2d 638, 661 (D. Del. 2010) ("Assuming Mylan is correct, and assuming Mylan obtains FDA approval imminently, the 'loss' of up to 11 extra months of

7

exclusivity is not a legally cognizable harm for purposes of a preliminary injunction motion."); *cf. Otiogiakhi v. AAMCO Transmission, Inc.*, Civil Action No. 2:11-CV-04620 (DMC)(JAD), 2011 WL 5825953, at *8 (D.N.J. Nov. 17, 2011) ("Plaintiff cannot suffer legally cognizable harm in being precluded from exercising rights that he does not lawfully possess."). Thus, because the harassment Jones alleges does not rise to the level of a constitutional violation, we find that Jones has not demonstrated that he will suffer irreparable harm if not granted an injunction.

B.

Next we turn to Allegations 3–5, Jones's claims that he is receiving inadequate medical treatment. As with his abuse and harassment claims, Jones has failed to establish a likelihood of success on the merits or irreparable harm with respect to these claims.

Prison inmates who are deprived of medical treatment can state an Eighth Amendment claim for cruel and unusual punishment only if they can establish that they have suffered "'unnecessary and wanton infliction of pain' or 'deliberate indifference to [their] serious medical needs.'" *Spruill v. Gillis*, 372 F.3d 218, 235 (3d Cir. 2004) (quoting *White v. Napoleon*, 897 F.2d 103, 108–09 (3d Cir. 1990)). A plaintiff can show deliberate indifference by demonstrating "that the defendants intentionally denied or delayed medical care." *Brown v. Wetzel*, Civil Action No. 13-5469, 2014 WL 5493244, at *4 (E.D. Pa. Oct. 29, 2014). However, allegations of medical malpractice and mere disagreements as to the proper medical treatment are insufficient to establish a constitutional violation. *Spruill*, 372 F.3d at 235.

Here, Jones has failed to show a likelihood of success on the merits of his claims because he does not allege more than malpractice and disagreement over the course of his medical treatment. Specifically, Jones asserts that (1) a negative reaction to his cancer medication

8

received at Einstein Hospital caused him to develop sores on his penis, treatment for those sores has been ineffective, and he has not been referred for outside treatment; (2) he has not been able to see a dentist despite putting in requests months ago; and (3) his cancer treatment has caused severe hot flashes that medical personnel have not addressed.  (Doc. No. 6 at ¶¶ 4–6.)

With respect to this first claim, Jones alleges only that the sores developed as a side effect of treatment he received while at Einstein Hospital, *not* by SCI Phoenix medical staff.  Because this treatment was not given by the prison medical staff, Jones cannot establish that the prison medical staff deliberately inflicted this treatment upon him.  (*See id.* at ¶ 4.)  Moreover, he does not assert that prison medical staff have ignored the sores; indeed, he describes how medical staff have prescribed creams and pills to help treat his condition.  (*Id.*)  Thus, as for the development of his condition and its treatment thus far, Jones has not asserted deliberate indifference.  At most, these allegations could rise to the level of simple negligence or medical malpractice, which is not enough support an Eighth Amendment claim.  *See Spruill*, 372 F.3d at 235; *see also Bryant v. Kaskie*, 744 F. App'x 39, 42 (3d Cir. 2018) ("Kaskie's alleged failure to inform Bryant of the potential side effects of Risperidone is insufficient to demonstrate deliberate indifference.  Even if this allegation could rise to the level of negligence, simple negligence cannot support an Eighth Amendment claim.").  As for Jones's complaint that he has not yet been referred for treatment by an outside physician, this amounts to a mere disagreement with the course of his medical treatment and also cannot serve as the basis for an Eighth Amendment claim.  *Spruill*, 372 F.3d at 235; *see also Olowu v. Schwank*, No. Civ.A. 05-2085, 2005 WL 2077256, at *4 (E.D. Pa. Aug. 24, 2005) ("A prison official's refusal to follow a recommendation from its medical staff for outside treatment . . . does not establish deliberate indifference.").  Thus, Jones cannot establish a likelihood of success on the merits with respect to this claim.

So too with his claims regarding the prison dentist.  Courts have found valid Eighth Amendment claims where necessary medical treatment is delayed for non-medical reasons.  *See Monmouth Cty. Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 346–47 (3d Cir. 1987); *see also Carter v. Smith*, Civil Action No. 08-279, 2009 WL 3088428, at *4–5 (E.D. Pa. Sept. 22, 2009).  However, this case is unlike those cases.  As Sorber's response to Jones's motion makes clear, Jones has not been delayed in being able to see a dentist for arbitrary, non-medical reasons.  Rather, "due to the implementation of COVID-19 mitigation measures dental appointments have been significantly delayed."  (Doc. No. 14 at p. 14 n.2.)  Because Sorber has provided a reasonable explanation for the delay in providing Jones with dental treatment, Jones has not established a likelihood of success on the merits of this claim.[7]

Similarly, Jones cannot establish a likelihood of success on the merits with respect to his claim regarding the hot flashes he suffers as a side effect of his cancer treatment.  Courts have only allowed deliberate indifference claims when prisoners experience "serious side effects" to medication—such as regular vomiting, intolerable depression, or worsening seizures—that are ignored by prison medical staff.  *See Burk v. Crowe*, Civil Action No. 19-CV-5792, 2020 WL 42758, at *3 (E.D. Pa. Jan. 3, 2020) (citing *White v. Napoleon*, 897 F.2d 103, 110 (3d Cir. 1990)); *see also Muse v. Lessiq*, No. Civ.A. 92-4599, 1994 WL 7702, at *2 (E.D. Pa. Jan. 13, 1994) ("The complaint alleges that Muse suffered greatly from the incorrect administration of insulin, including shaking, chills and passing out.  Muse asserts that at one point his blood level was so low as to be life-threatening.").  Failure to respond to a prisoner's complaints of minor side effects, and even failure to inform a prisoner of the potential side effects of a drug, does not

---

[7] Sorber also states that Jones is being scheduled for a dental appointment shortly but that the prison must take into consideration the implementation of COVID-19 mitigation measures.  (Doc. No. 14 at p. 14 n.1.)

amount to deliberate indifference. *See Bryant*, 744 F. App'x at 42; *Escalera v. Butler*, Civ. A. No. 92-7435, 1993 WL 19717, at *1 (E.D. Pa. Jan. 22, 1993). This is because complaints about minor side effects—particularly when weighed against the necessary treatment of a major disease such as cancer—amount to mere disagreement as to the proper medical treatment. *See Spruill*, 372 F.3d at 235.

Jones has also not established that he will suffer irreparable harm if not granted a preliminary injunction as to these allegations. Jones has failed to establish irreparable harm as to his sores and his hot flashes because his claims, as alleged, do not rise to the level of a legally cognizable harm. *See Rsch. Found. of State Univ. of N.Y.*, 723 F. Supp. 2d at 661. As for Jones's complaint about his delayed dental appointment, Superintendent Sorber has assured us that Jones "is being scheduled for a dental appointment shortly." (Doc. No. 14 at p. 14 n.2.) Since this issue will be resolved shortly without the intervention of the Court, Jones cannot show irreparable harm here, either.

## C.

We next address Allegation 7, Jones's claim that his legal documents have gone missing. Here, too, Jones fails to establish a likelihood of success on the merits or irreparable harm.

The First Amendment provides every inmate with the right to access the courts. *Monroe v. Beard*, 536 F.3d 198, 205 (3d Cir. 2008). Prison officials can theoretically violate that right by confiscating or losing an inmate's legal materials. *See id.*; *Bowens v. Wetzel*, Civil Action No. 20-CV-3012, 2020 WL 7123148, at *5 (E.D. Pa. Dec. 4, 2020); *McClain v. Shaylor*, Civil Action No. 19-cv-5148, 2020 WL 1539940, at *3–4 (E.D. Pa. Mar. 2, 2020). However, in order to establish a violation of their First Amendment right to access of the courts due to the loss of their legal materials, inmates must demonstrate "(1) that they suffered an 'actual injury'—that they

11

lost a chance to pursue a 'nonfrivolous' or 'arguable' underlying claim; and (2) that they have no other 'remedy that may be awarded as recompense' for the lost claim other than in the present denial of access suit." *Monroe*, 536 F.3d at 205 (quoting *Christopher v. Harbury*, 536 U.S. 403, 415 (2002)). Here, Jones's claim will fail as a matter of law because he has failed to describe what the underlying claim in his lost filings was and has not described what remedy he lost. *Id.*; *Bowens*, 2020 WL 7123148, at \*5. Accordingly, we find that Jones has established neither a likelihood of success on the merits of his claim, nor that he will suffer irreparable harm if not granted an injunction.

### D.

Finally, we address Allegation 8, Jones's assertion that he was denied access to a hearing with his parole board. (Doc. No. 6 at ¶ 9.) On this claim, too, Jones fails to establish a likelihood of success on the merits or that he will suffer irreparable harm.

We first address Jones's likelihood of success on the merits. It is true, as Sorber asserts, that under federal and Pennsylvania law prisoners do not have a constitutionally protected liberty interest in receiving parole. *See, e.g.*, *Swarthout v. Cooke*, 562 U.S. 216, 220 (2011); *Coady v. Vaughn*, 770 A.2d 287, 289 (Pa. 2001). This means that Jones has no chance of success on the merits of a procedural due process claim with respect to his parole hearing. *See Davis v. Pa. Parole Bd.*, Civil No. 4:18-CV-01206, 2019 WL 1247528, at \*4 (M.D. Pa. Jan. 30, 2019).

However, our analysis does not end there. While prisoners do not have *procedural* due process rights with respect to parole hearings, they do have *substantive* due process rights. *See, e.g.*, *Burkett v. Love*, 89 F.3d 135, 139–40 (3d Cir. 1996). This means that states may not deny an inmate parole "on constitutionally impermissible grounds, such as race, or in retaliation for exercising constitutional rights." *Davis*, 2019 WL 1247528, at \*4. Liberally construing Jones's

allegations that the guards' actions with respect to his parole hearing violated his "1st[,] 14th, [and] 8th Amendment constitutional rights," he may be raising a substantive due process claim. (*See* Doc. No. 6 at ¶ 9.)

Nonetheless, we find that Jones has not established a likelihood of success on the merits of this claim. This is because prison officials have wide latitude in setting policies to further valid penological goals, such as internal security. *See Overton v. Bazzetta*, 539 U.S. 126, 131–32 (2001); *Weiss v. Mader*, 525 F. Supp. 834, 839 (E.D. Pa. 1981). Jones fails to allege that SCI Phoenix does not have a policy prohibiting bringing paperwork into the parole hearing room, nor does he allege that such a policy was selectively enforced against him for some impermissible reason. (*See* Doc. No. 6 at ¶ 9.) Instead, he merely asserts that he was refused entry to the hearing room because a prison policy forbade him from bringing in outside paperwork with him, and that prison staff would not show him the policy. (*See id.*) This may be unfair, but it does not fall so obviously outside the scope of prison officials' discretion to set internal prison policies as to establish a likelihood that Jones will succeed on the merits of his claim.

Similarly, Jones has failed to establish that he will suffer irreparable harm if not granted an injunction. The harm Jones alleges is that "it could be years" before he is scheduled to see the parole board again. (*Id.* at p. 7.) However, because Jones has no right under federal or state law to receive parole, this is not a legally cognizable harm. *See Swarthout*, 562 U.S. at 220; *Coady*, 770 A.2d at 289.

If Jones's allegations about his parole hearing—that he was prevented from bringing a small amount of paperwork into the hearing room and denied access to his hearing for asking to view the policy that prohibited bringing in the paperwork—are true, then he was treated remarkably unfairly and the guards involved at the SCI Phoenix facility should be condemned.

13

However, Jones has no constitutional right to receive parole and has not asserted that he was prevented from entering his parole hearing for a constitutionally impermissible reason. Accordingly, we reluctantly conclude that Jones has failed to establish a likelihood on the success of the merits of his claim regarding the parole hearing, or that he has suffered irreparable harm.

## IV.

Because we find that Jones has not demonstrated a likelihood of success on the merits or irreparable harm as to any of his claims, we do not rule on whether granting the injunction would result in greater harm to Defendants, or whether the public interest favors an injunction. *See Reilly*, 858 F.3d at 179. And because he has not met his burden of showing likelihood of success on the merits or irreparable harm, Jones's motion is denied.

An appropriate order follows.