**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **JAMES JONES,** | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **CIVIL ACTION NO. 20-CV-5270** |
| | : | |
| **SUPERINTENDENT SORBU,** *et al.,* | : | |
| **Defendants.** | : | |

## <u>MEMORANDUM</u>

**MARSTON, J.**                                                    **February 4, 2021**

Plaintiff James Jones, a prisoner currently incarcerated at SCI-Phoenix, filed this civil

action pursuant to 42 U.S.C. § 1983 based on allegations related to the handling of grievances,

the provision of medical treatment, and the conduct of prison supervisors.  (Doc. No. 5.)  Named

as Defendants in Jones's Amended Complaint[1] are: (1) Secretary of Corrections John Wetzel, (2)

Deputy Secretary Tammy Ferguson, (3) Superintendent of SCI-Phoenix J. Sorbu, (3) Deputy

Superintendent Terra, (4) Former Deputy Superintendent John Murray, (5) Major Clark, (6)

Former Unit Manager Kelly, (7) Former Unit Manager Corenevich, (8) Former Unit Manager

Hensley, (9) Medical Administrator Sipple, (10) Dr. Macheli, (11) Dr. Weiner, (12) Dr. Klemet,

---

[1] On November 2, 2020, Jones was directed to sign his Complaint (Doc. No. 1) filed on October 21, 2020, and to submit a copy of his inmate account statement (Doc. No. 4).  Instead, on November 23, 2020, Jones filed a signed Amended Complaint.  (Doc. No. 5.)

Shortly after filing his Amended Complaint, Jones also filed a signed version of his original Complaint.  (Doc. No. 9.)  The Court then directed Jones to clarify which signed version he wished to proceed with given the timing of his filings.  (Doc. No. 10.)  On January 20, 2021, Jones confirmed he wished to proceed with his signed Amended Complaint (Doc. No. 5).  (Doc. No. 15.)  Accordingly, the Court screens Jones's Amended Complaint.

(13) Physician Assistant Defranchesco, (14) Physician Assistant Wakeman, (15) Nurse Savage, and (16) unidentified Doe Defendants.[2] (*Id.*)

We are required by statute to screen Jones's Amended Complaint to determine whether it states "a claim on which relief may be granted." *See* 28 U.S.C. § 1915(e)(2)(B)(ii). For the following reasons, the Court finds that only Jones's deliberate indifference claims against Defendants Corenevich, Sorbu, and Terra pass statutory screening. We will dismiss with prejudice all official capacity claims as well as Jones's claims: (1) based on grievances, (2) seeking transfer to a different prison facility, (3) seeking transfer to new cells, (4) based on destruction of property, and (5) against Defendant Hensley based on a guard-on-inmate sexual assault involving a different inmate. Jones will be permitted to file a second amended complaint regarding his deliberate indifference, retaliation, equal protection, and supervisor liability claims, or opt to proceed only on the claims that pass statutory screening. Additionally, Jones's motion for appointment of counsel will be granted.

I.     **BACKGROUND**

       A.     **Factual Allegations**

       Taking the allegations set forth in the Amended Complaint as true, the Court finds as follows.

       Jones asserts claims for civil rights violations under 42 U.S.C. § 1983 and alleges a conspiracy by Defendants to deprive him of his civil rights by falsifying documents to ensure he

---

[2] The spelling of many of the Defendants' names is not consistent in Jones's Amended Complaint. (*See, e.g.*, Doc. No. 5 at ¶ 20 (referring to Defendant Corenevich as both "Corenevich" and "Crenevich").) The Court will use the spellings the Clerk of Court entered on the docket for this case. The Clerk of Court will also be directed to add Defendants named in the Amended Complaint but not listed on the docket as Defendants, namely Medical Administrator Sipple, Dr. Macheli, Dr. Weiner, Dr. Klemet, Physician Assistant Defranchesco, Physician Assistant Wakeman, Nurse Savage, and the unidentified Doe Defendants.

would not receive parole in retaliation for his constitutionally protected conduct.  (Doc. No. 5 at ¶¶ 1, 19, 21.)  He alleges Defendants Wetzel, Ferguson, Sorbu, Terra, Murray, Clark, Kelly, Corenevich, and Hensley, who hold supervisory positions at SCI-Phoenix or the Pennsylvania Department of Corrections ("Pa. DOC"), were aware of the conduct of subordinates that violated his rights and failed to act.  (*Id.* at ¶ 33.)

Jones's claims arise from several unrelated sources.  First, he asserts that medical Defendants at SCI-Phoenix subjected him to experimental medical treatments that caused him health problems requiring further medical treatment.  (*Id.* at ¶ 22.)  Dr. Macheli allegedly gave Jones experimental medication.  (*Id.* at ¶ 15.)  After Jones suffered ill effects, the drug was discontinued.  (*Id.*)  Jones alleges that Dr. Weiner, as director of medical services, should have ensured the drug was safe or explained the risks associated with it to Jones.  (*Id.* at ¶ 16.)  Dr. Klemet treated Jones for prostate cancer.  (*Id.* at ¶ 17.)  Dr. Klemet allegedly ignored Jones's complaints about the side effects of his cancer medication; the medication allegedly caused breast inflammation, which Jones found painful and humiliating.  (*Id.* at ¶¶ 17–18.)  Physicians Assistants Defranchesco and Wakeman also ignored Jones's complaints about his breast enlargement.  (*Id.* at ¶ 18.)

Second, Jones asserts that he is incarcerated due to a conviction for sexual assault and unnamed corrections officers have told other inmates the nature of his crimes in retaliation for Jones having filed grievances against them.  (*Id.* at ¶ 23.)  Jones claims these actions put him at risk of "assault [and] ridicule."  (*Id.*)  Third, Defendant Kelly allegedly engaged in a pattern of harassment after Jones was transferred from SCI-Graterford to SCI-Phoenix consisting of repeatedly moving his cell assignment and making racial remarks.  (*Id.* at ¶ 24.)  Fourth, Jones contends that during a family visit in 2019, he and his family members were subjected to a

racially motivated attack by a guard; the incident was reported to Hensley, and Jones appealed his grievance to Ferguson, Wetzel, and Terra, but nothing was done about it. (*Id.* at ¶ 27.) Fifth, Jones avers that electrical issues at SCI-Phoenix caused his TV and fan to explode. (*Id.* at ¶ 29.)

Sixth, Jones asserts that, after he had a dispute with Defendant Corenevich, he was denied radiation treatment for his prostate cancer from October 13 to October 26, 2019 pursuant to orders from Corenevich, Sorbu, and Terra. (*Id.* at ¶ 30.) He also alleges Corenevich prevented him from getting his medication by refusing to give him a pass to the medical unit. (*Id.* at ¶ 10.)

Seventh, Jones brings a claim against Defendant Hensley, the Prison Rape Elimination Act Coordinator at SCI-Phoenix. (*Id.* at ¶ 11.) Jones allegedly reported a guard-on-inmate sexual assault to Hensley in 2019, but Hensley covered up the incident. (*Id.*) Jones alleges that Hensley covered up the incident because Jones was the one who reported it. (*Id.*)

Eighth, Jones alleges that former deputy superintendent John Murray mislabeled Jones a predator after he received a misconduct in 2011. (*Id.* at ¶ 12.) Purportedly, Murray's act negatively impacted Jones's inmate classification and liberty interests. (*Id.*) Finally, Jones alleges that supervisory defendants Wetzel, Ferguson, Sorbu, Terra, Clark, Corenevich, Kelly, and Sipple knew about the above incidents and failed to act to stop or correct them. (*Id.* at ¶¶ 3–10.) Jones says that he spoke with Ferguson, Terra, Clark, Hensley, and others about his treatment and conditions complaints, placing those Defendants on notice of his issues, but they did nothing to help him. (*Id.* at ¶ 25.) Jones also filed 25 grievances against staff and spoke directly to Wetzel who told Jones he would address Jones's concerns. (*Id.* at ¶ 26.)

Jones asserts claims against all Defendants in their official and individual capacities under 42 U.S.C. § 1983 for violations of his First, Eighth, and Fourteenth Amendment rights.

(*Id.* at ¶¶ 1, 19, 36.)  He seeks transfer to a different facility, medical attention, money damages, and injunctive relief.  (*Id.* at ¶¶ 39–41.)

### B.    Procedural History

Jones filed an application to proceed *in forma pauperis* (Doc. No. 1), along with his original Complaint (Doc. No. 2) on October 21, 2020.  On November 2, 2020, the Court denied Jones's application to proceed *in forma pauperis* without prejudice and returned Jones's unsigned Complaint with instructions that he should sign it before refiling.  (Doc. No. 4.)  Jones filed his Amended Complaint on November 23, 2020.[3]  (Doc. No. 5.)  In addition to stating his allegations and claims, Jones's Amended Complaint includes a request for appointment of counsel.  (*Id.* at ¶ 37.)

On December 16, 2020, Jones filed a Motion for Injunctive Relief detailing similar conduct as listed in his Amended Complaint, as well as his prisoner account statement.  (Doc. Nos. 6, 8.)  On January 26, 2021, Defendants filed an opposition brief.  (Doc. No. 14.)  The Court will address this motion in a separate memorandum.

## II.    SCREENING JONES'S COMPLAINT

### A.    Standard of Review

Because Jones is unable to pay the filing fee in this matter, the Court will grant him leave to proceed *in forma pauperis*.[4]  *See* 28 U.S.C. § 1915(a) (stating that the Court may authorize the commencement of a lawsuit "without prepayment of fees or security" upon a showing that a prisoner is "unable to pay such fees or give security therefor").

---

[3] As noted above (*supra* n.1), Jones also refiled a signed copy of his original complaint.  (Doc. No. 9.)  Subsequently, Jones clarified he wanted to proceed with his Amended Complaint.  (Doc. No. 15.)

[4] The Court accepts Jones's seven-month prisoner account statement (Doc. No. 8), as substantial compliance with the *in forma pauperis* requirements.  Because Jones is a prisoner, he is still required to pay the $350 filing fee in installments under the Prison Litigation Reform Act.  28 U.S.C. § 1915(b).

The Court also analyzes whether Jones's amended complaint states "a claim on which relief may be granted." *See* 28 U.S.C. § 1915(e)(2)(B)(ii) ("Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action or appeal fails to state a claim on which relief may be granted."). In analyzing a complaint under § 1915(e)(2)(B)(ii), we use the same standard applicable to motions to dismiss under Federal Rules of Civil Procedures 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks omitted). Conclusory allegations do not suffice. *Id.* However, because Jones is proceeding *pro se*, we liberally construe the allegations in the amended complaint. *Higgs v. Att'y Gen.*, 655 F.3d 333, 339 (3d Cir. 2011) ("The obligation to liberally construe a *pro se* litigant's pleadings is well-established.").

Moreover, a complaint may be dismissed for failing to comply with Federal Rule of Civil Procedure 8. *Garrett v. Wexford Health*, 938 F.3d 69, 91 (3d Cir. 2019). To conform to Rule 8, a pleading must contain a short and plain statement showing that the plaintiff is entitled to relief. *See* Fed. R. Civ. P. 8(a)(2); *Travaline v. U.S. Sup. Ct.*, 424 F. App'x 78, 79 (3d Cir. 2011). The Third Circuit recently explained that in determining whether a pleading meets Rule 8's "plain" statement requirement, the Court should "ask whether, liberally construed, a pleading 'identifies discrete defendants and the actions taken by these defendants' in regard to the plaintiff's claims." *Garrett*, 938 F.3d at 93 (citation omitted). A pleading may still satisfy the "plain" statement requirement "even if it is vague, repetitious, or contains extraneous information" and "even if it does not include every name, date, and location of the incidents at issue." *Id.* at 93–94. The

6

important consideration for the Court is whether, "a *pro se* complaint's language . . . presents cognizable legal claims to which a defendant can respond on the merits." *Id.* at 94.

However, "a pleading that is so 'vague or ambiguous' that a defendant cannot reasonably be expected to respond to it will not satisfy Rule 8." *Id.* at 93; *see also Fabian v. St. Mary's Med. Ctr.*, Civ. A. No. 16-4741, 2017 WL 3494219, at *3 (E.D. Pa. Aug. 11, 2017) ("Federal Rule of Civil Procedure 8 requires that pleadings provide enough information to put a defendant on sufficient notice to prepare their defense and also ensure that the Court is sufficiently informed to determine the issue." (quotations omitted)).  Dismissals under Rule 8 are "reserved for those cases in which the complaint so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised." *Garrett*, 938 F.3d at 94 (quoting *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988)).

### B.    Analysis

Jones brings his complaint under 42 U.S.C. § 1983.  (Doc. No. 5 at ¶ 1.)  That section provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceedings for redress . . . .

42 U.S.C. § 1983.  "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988).

### 1.      Official Capacity Claims

Jones names all Defendants in their individual and official capacities and seeks money damages as part of his relief.  (Doc. No. 5 at ¶ 19.)  The official capacity claims against the Defendants for money damages may not proceed because the Eleventh Amendment bars suits against a state and its agencies in federal court that seek monetary damages.  *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 99–100, 103 (1984); *see also A.W. v. Jersey City Pub. Schs.*, 341 F.3d 234, 238 (3d Cir. 2003).  Suits against state officials acting in their official capacities are really suits against the employing government agency, and as such, are also barred by the Eleventh Amendment.  *A.W.*, 341 F.3d at 238; *see also Hafer v. Melo*, 502 U.S. 21, 25 (1991) ("Suits against state officials in their official capacity [] should be treated as suits against the State."); *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 70–71 (1989) ("[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office.").

As the Commonwealth of Pennsylvania has not waived its Eleventh Amendment immunity for lawsuits filed in federal court, *see* 42 Pa. Cons. Stat. § 8521(b), the State and its departments, as well as their officials sued in their official capacities, are immune from suits filed in federal court.  *See Downey v. Pa. Dep't of Corr.*, 968 F.3d 299, 310 (3d Cir. 2020) ("Pennsylvania law mak[es] clear that any waivers to sovereign immunity do not apply to lawsuits in federal court.  Pennsylvania has not waived its sovereign immunity defense in federal court." (citation omitted)).  Accordingly, Jones's official capacity claims are dismissed with prejudice.

### 2.   Claims Seeking Transfer to a Different Prison

It is well settled that prisoners have no inherent constitutional right to placement in any particular prison, to any particular security classification, or to any particular housing assignment. *See Wilkinson v. Austin*, 545 U.S. 209, 221–22 (2005) (holding that the Constitution does not give rise to a liberty interest in avoiding transfers to more adverse conditions of confinement); *Olim v. Wakinekona*, 461 U.S. 238, 245 (1983) ("Just as an inmate has no justifiable expectation that he will be incarcerated in any particular prison within a State, he has no justifiable expectation that he will be incarcerated in any particular State."); *Meachum v. Fano*, 427 U.S. 215, 224 (1976) ("[C]onviction has sufficiently extinguished the defendant's liberty interest to empower the State to confine him in *any* of its prisons."); *Keeling v. Barrager*, 666 F. App'x 153, 156 (3d Cir. 2016) (per curiam) (finding that prisoner had "no protected liberty interest" in a particular cell assignment). Accordingly, to the extent Jones seeks relief in the form of a transfer to a different prison, his claims are dismissed with prejudice. For this same reason, the portion of Jones's claim against Defendant Kelly in which he alleges that Kelly is liable under § 1983 for repeatedly changing his cell assignment must also be dismissed with prejudice. *See Keeling*, 666 F. App'x at 156; *O'Brien v. Kurtz*, Civ. A. No. 86-4365, 1986 WL 11259, at *1 (E.D. Pa. Oct. 8, 1986) ("Cell assignments are a matter of internal prison administration requiring the exercise of discretion by prison officials.").

### 3.   Claims Based on Grievances

Jones alleges that he filed 25 grievances against staff and spoke directly to Defendant Wetzel who told Jones he would address his concerns. (Doc. No. 5 at ¶ 26.) He also alleges Defendants Wetzel, Ferguson, Sorbu, Terra, Clark, Hensley, Corenevich, Kelly, and Sipple knew

about the allegations he raises in his Amended Complaint through their involvement with his grievances and failed to act.  (*Id.* at ¶ 25.)

"'A defendant in a civil rights action must have personal involvement in the alleged wrongs' to be liable."  *Curtis v. Wetzel*, 763 F. App'x 259, 262 (3d Cir. 2019) (per curiam) (quoting *Rode v. Dellarciprete*, 845 F.2d 1195, 1208 (3d Cir. 1988)).  However, "[m]erely responding to or reviewing an inmate grievance does not rise to the level of personal involvement necessary to allege an Eighth Amendment deliberate indifference claim."  *Tenon v. Dreibelbis*, 606 F. App'x 681, 688 (3d Cir. 2015) (per curiam) (citing *Rode*, 845 F.2d at 1208); *see also Curtis*, 763 F. App'x at 263 ("The District Court properly determined that Defendants Wenerowicz, Lewis, and Shaylor — who participated only in the denial of Curtis' grievances — lacked the requisite personal involvement [in the conduct at issue].");  *Folk v. Prime Care Med.*, 741 F. App'x 47, 51 (3d Cir. 2018) (per curiam) ("Although some of these defendants were apparently involved in responding to some of Folk's prison grievances, there are no allegations linking them to the underlying incidents and thus no basis for liability based on those later grievance reviews.").

Claims based on the handling of prison grievances fail because "[p]rison inmates do not have a constitutionally protected right to a grievance process."  *Jackson v. Gordon*, 145 F. App'x 774, 777 (3d Cir. 2005) (per curiam); *see also Caldwell v. Beard*, 324 F. App'x 186, 189 (3d Cir. 2009) (per curiam).  Accordingly, the facts alleged by Jones about grievances do not give rise to a plausible basis for a constitutional claim and will be dismissed with prejudice.

### 4.    Eighth Amendment Claim for Property Destruction

The destruction of Jones's television and fan (*see* Doc. No. 5 at ¶ 29) does not provide a basis for a claim under the Eighth Amendment.  Conditions of confinement violate the Eighth

Amendment's prohibition on cruel and unusual punishment, *see* U.S. Const. amend. VIII, if they satisfy two criteria.  First, the conditions "must be, objectively, sufficiently serious" such that a "prison official's act or omission . . . result[s] in the denial of the minimal civilized measure of life's necessities."  *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (citations and quotation marks omitted).  Second, the official responsible for the challenged conditions must exhibit a "sufficiently culpable state of mind," which "[i]n prison-conditions cases . . . is one of deliberate indifference to inmate health or safety."  *Id.*  "The destruction of property does not equate to a sufficiently serious deprivation that would give rise to a claim under the Eighth Amendment."  *Nadab v. Wetzel*, Civil Action No. 20-CV-3537, 2020 WL 6131247, at *4 (E.D. Pa. Oct. 16, 2020) (citing *Wongus v. Corr. Emergency Response Team*, 389 F. Supp. 3d 294, 301–02 (E.D. Pa. 2019)).  Thus, in addition to Jones failing to specify the Defendant responsible for the damage to his television and fan, his claim is not a plausible basis for relief.[5]  Accordingly, the Court will dismiss Jones's Eighth Amendment claim based on the destruction of his television and fan with prejudice.

### 5.    Eighth Amendment Claim Based on Medical Treatment

To state a constitutional claim based on the failure to provide medical treatment, a prisoner must allege facts indicating that prison officials were deliberately indifferent to his serious medical needs.[6]  *See Farmer*, 511 U.S. at 835; *Spruill v. Gillis*, 372 F.3d 218, 235 (3d

---

[5] To the extent Jones is raising a Fourteenth Amendment claim related to the destruction of his television and fan, his claim also fails.  As this Court has previously explained, destruction of an inmate's property "is no basis for a due process claim because Pennsylvania law provides . . . an adequate state remedy."  *Hill v. Wetzel*, No. 20-cv-3631, 2020 WL 5407863, at *3 (E.D. Pa. Sept. 9, 2020).

[6] Prisoners may also raise an Eighth Amendment claim if their medical team unnecessarily and wantonly inflicts pain.  *Spruill v. Gillis*, 372 F.3d 218, 235 (3d Cir. 2004).  Although Jones avers that he "was subjected to medical experimentation" and has "health problems that are serious" (Doc. No. 5 at ¶ 22), he does not assert that any Defendant deliberately inflicted pain upon him.

Cir. 2004).  A prison official is not deliberately indifferent "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  *Farmer*, 511 U.S. at 837.  "A medical need is serious . . . if it is one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention."  *Monmouth Cty. Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987) (internal quotations omitted).

Deliberate indifference is properly alleged "where the prison official (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment."  *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999).  A serious medical need exists where "failure to treat can be expected to lead to substantial and unnecessary suffering."  *Colburn v. Upper Darby Twp.*, 946 F.2d 1017, 1023 (3d Cir. 1991).  Allegations of medical malpractice and mere disagreement regarding proper medical treatment are insufficient to establish a constitutional violation.  *See Spruill*, 372 F.3d at 235. Furthermore, "[a] defendant in a civil rights action must have personal involvement in the alleged wrongs" to be liable.  *Rode*, 845 F.2d at 1207; *see also Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020) (holding that attaching documents to a grievance form is insufficient under *Rode* to show personal direction or actual knowledge by recipient of underlying facts)).

Jones alleges that Dr. Macheli subjected him to experimental treatment for his prostate cancer that caused him health problems requiring further medical treatment.  (Doc. No. 5 at ¶ 22.)  He also asserts that when he suffered ill-effects, the drug was discontinued.  (*Id.* at ¶ 15.) Jones alleges that Dr. Weiner, as director of medical services, should have ensured the drug was

12

safe or explained the risk. (*Id.* at ¶ 16.) Dr. Klemet, Jones's cancer doctor, allegedly ignored Jones's complaints about the side effect of Jones's cancer medication, which Jones avers has caused humiliating breast enlargement. (*Id.* at ¶ 17.) Physicians Assistants Defranchesco and Wakeman also ignored Jones's complaints about his breast enlargement. (*Id.* at ¶ 18.)

None of these allegations rise to the level of deliberate indifference. Drs. Macheli, Weiner, and Klemet and PAs Defranchesco and Wakeman are not alleged to have refused treatment, delayed treatment, or prevented treatment. Rather, Jones only asserts that the Defendants committed medical malpractice in treating him with a drug that caused side effects. However, as noted above, mere allegations of medical malpractice are insufficient to state an Eighth Amendment claim for deliberate indifference. *See Spruill*, 372 F.3d at 235. Accordingly, the deliberate indifference claims against these Defendants are dismissed. However, because the Court cannot say at this time that Jones can never assert a plausible deliberate indifference claim against Drs. Macheli, Weiner, and Klemet and PAs Defranchesco and Wakeman, the dismissal will be without prejudice, and Jones will be afforded an opportunity to file a second amended complaint if he can cure the defects in his claims against these Defendants.

However, the deliberate indifference claims against Defendants Corenevich, Sorbu, and Terra pass § 1915 screening since Jones alleges these Defendants prevented him from receiving radiation treatment for his prostate cancer from October 13 to October 26, 2019, and Corenevich prevented him from getting his medication by refusing to give him a pass to the medical unit. As such, Jones has sufficiently alleged that Defendants prevented him from "receiving needed . . . medical treatment." *Rouse*, 182 F.3d at 197.

### 6.      First Amendment Retaliation Claims

In order to state a plausible First Amendment retaliation claim, a prisoner must allege that:  (1) he engaged in constitutionally protected conduct; (2) he suffered an adverse action sufficient to deter a person of ordinary firmness from exercising his constitutional rights; and (3) the constitutionally protected conduct was "a substantial or motivating factor" for the adverse action.  *See Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001); *see also Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003); *Coit v. Garman*, 812 F. App'x 83, 86 (3d Cir. 2020).  With respect to the third element, causation, Jones "can establish . . . a prima facie case of retaliation with evidence of: '(1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link.'"  *Banks v. Kendra*, Civil Action No. 17-0329, 2017 WL 6206128, at *6 (E.D. Pa. Dec. 8, 2017) (quoting *Watson v. Rozum*, 834 F.3d 417, 423 (3d Cir. 2016)).

Jones alleges that unnamed Defendants engaged in a conspiracy to falsify documents to ensure he would not receive parole in retaliation for his constitutionally protected conduct.  (Doc. No. 5 at ¶ 21.)  He separately asserts that unnamed corrections officers have told other inmates the nature of his crimes in retaliation for Jones having filed unspecified grievances against them. (*Id.* at ¶ 23.)  While a prisoner's filing of a grievance is constitutionally protected conduct, *see Robinson v. Taylor*, 204 F. App'x 155, 157 (3d Cir. 2006) (citing *Mitchell*, 318 F.3d at 530; *Davis v. Goord*, 320 F.3d 346, 35–53 (2d Cir. 2003)), Jones's claim does not state a plausible basis for relief because it contains only a conclusory allegation of retaliation.  *See Iqbal*, 556 U.S. at 678; *Lewis v. English*, Civil Action No. 20-2790, 2020 WL 4530696, at *3 (E.D. Pa. Aug. 6, 2020).

14

Jones plausibly alleges that he engaged in protected activity by filing grievances, *see Taylor*, 204 F. App'x at 157, and suffered an adverse action in that his parole was denied and the guards publicly announced his crimes, *see Mitchell*, 318 F.3d at 530; *cf. Miller v. Leathers*, 913 F.2d 1085, 1088 n.* (4th Cir. 1990) (finding an adverse action where prison officials labeled the plaintiff a "snitch"). The remaining question, then, is whether Jones has plausibly alleged causation. The Third Circuit has held that, particularly given a court's duty to construe *pro se* pleadings liberally, a prisoner's mere use of the word "retaliation" in his complaint is sufficient to imply a causal link between his protected activity and the adverse action taken against him. *Mitchell*, 318 F.3d at 530. However, the mere use of the word "retaliation" is not talismanic. To adequately plead causation, Jones must provide further detail regarding which grievances led to the purported retaliation, which prison officials retaliated, and how he knows that their conduct was substantially motivated by his protected activity. *See Nadab*, 2020 WL 6131247 at *6 ("Without further clarification, the Court cannot discern how each instance of alleged retaliation was motivated by [plaintiff]'s grievances."); *cf. Walker v. Regan*, Civil Action No. 13-7556, at *8 (E.D. Pa. June 9, 2015) (finding a plaintiff adequately pled causation when the complaint alleged that the defendant's unjustified pattern of antagonism "was temporally proximate" to the plaintiff's protected activity).

Accordingly, this claim must be dismissed. Like Jones's deliberate indifference claims, because the Court cannot say at this time that Jones can never assert a plausible retaliation claim, the dismissal will be without prejudice, and Jones will be granted leave to amend if he can cure the defects the Court has identified in his claims.

7.        **Fourteenth Amendment Claim**

Jones asserts a Fourteenth Amendment claim but does not specify the nature of the claim,

nor does he identify the Defendants who allegedly violated his Fourteenth Amendment rights.

The Court understands Jones to be alleging that (1) Defendant Kelly violated his equal protection

rights when Kelly made racial remarks toward him (*see* Doc. No. 5 at ¶ 24) and (2) an unnamed

guard subjected Jones and unnamed family members to a racially motivated attack in 2019 (*id.* at

¶ 27).

"The Equal Protection Clause of the Fourteenth Amendment commands that no State

shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is

essentially a direction that all persons similarly situated should be treated alike." *City of*

*Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (quoting *Plyler v. Doe*, 457 U.S.

202, 216 (1982)).  To establish an equal protection violation, a prisoner must allege facts that a

prison employee "treated him differently than other similarly situated prisoners." *Requena v.*

*Roberts*, 893 F.3d 1195, 1210 (10th Cir. 2018).  "Individuals are 'similarly situated' only if they

are alike 'in all relevant respects.'" *Id.* (quoting *Coal. for Equal Rights, Inc. v. Ritter*, 517 F.3d

1195, 1199 (10th Cir. 2008)).  Additionally, to state a race-based equal protection claim, a

plaintiff must allege that defendants were motivated by racial animus.  *W.B. v. Matula*, 67 F.3d

484, 503 (3d Cir. 1995) (citing *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971)).

The allegation that Defendant Kelly made racist remarks does not state a § 1983 claim

because verbal threats or taunts, "without more," are insufficient to violate the Constitution.  *See*

*Dunbar v. Barone*, 487 F. App'x 721, 723 (3d Cir. 2012) (holding that threats that inmate was a

"marked man and that his days were numbered" did not state Eighth Amendment claim);

*McBride v. Deer*, 240 F.3d 1287, 1291 n.3 (10th Cir. 2001) (holding that threat to spray inmate

16

with mace did not violate Eighth Amendment); *DeWalt v. Carter*, 224 F.3d 607, 612 (7th Cir.

2000) ("Standing alone, simple verbal harassment does not constitute cruel and unusual

punishment, deprive a prisoner of a protected liberty interest or deny a prisoner equal protection

of the laws."); *Abuhouran v. Acker*, Civ. A. No. 04-2265, 2007 WL 603045, at *4 (E.D. Pa. Feb.

22, 2007) ("Although derogatory language in reference to plaintiff's race or ethnicity is strong

evidence that the conduct in question is racially or ethnically motivated, it alone cannot support

an equal protection claim.").  Defendant Kelly's use of racial epithets, though despicable and

indefensible, does not amount to an equal protection violation absent "harassment or some other

conduct that deprives the victim of established rights."  *Williams v. Bramer*, 180 F.3d 699, 706

(5th Cir. 1999); *Mugavero v. Town of Kearny*, Civ. A. No. 12-2439, 2013 WL 3930120, at *3

(D.N.J. July 30, 2013) ("[L]ike offensive statements, the display or drawing of offensive imagery

does not, on its own, amount to a constitutional violation.").

An equal protection claim requires a showing of intentional or purposeful discrimination

against prisoners in a protected class, such as a racial group, and that prisoners outside the

protected class received more favorable treatment than did a prisoner within the protected class.

*See, e.g.*, *Blanchard v. Gallick*, 448 F. App'x 173, 176 (3d Cir. 2011); *Harris v. Greer*, 750 F.2d

617, 618 (7th Cir. 1984).  Moreover, "isolated events that adversely affect individuals are not

presumed to be a violation of the equal protection clause," as such incidents show at most "a

mere inconsistency in prison management which may not in itself constitute a cognizable equal

protection claim."  *Shango v. Jurich*, 681 F.2d 1091, 1104 (7th Cir. 1982) (brackets omitted).

Jones's equal protection claims are not a plausible basis for relief because there are no

allegations in the Amended Complaint asserting that Jones was treated differently than any other

similarly situated inmates.  *Tillman v. Lebanon Cty. Corr. Fac.*, 221 F.3d 410, 424 (3d Cir. 2000)

("Where there is no discrimination, there is no equal protection violation.").  To the extent that

Jones's allegations may be read as asserting a claim based on a "class of one" theory, he must

allege he was intentionally treated differently from other similarly situated inmates and that there

was no rational basis for the treatment.  *See Phillips v. County of Allegheny*, 515 F.3d 224, 243

(3d Cir. 2008) (to state an equal protection claim on a "class of one" theory, "a plaintiff must

allege that (1) the defendant treated him differently from others similarly situated, (2) the

defendant did so intentionally, and (3) there was no rational basis for the difference in

treatment").  However, nothing in the Amended Complaint suggests that Jones was treated

differently due to his membership in a protected class and his claim against Defendant Kelly is

based solely on a verbal incident.  Additionally, his claim against the unnamed guard who

allegedly subjected him to a racially motivated attack is entirely conclusory.  *Iqbal*, 556 U.S. at

678; *Blanchard*, 448 F. App'x at 176.  Jones does not state what the "attack" consisted of, or

how he knows that it was racially motivated.  Accordingly, Jones's equal protection claims are

dismissed.  This dismissal will also be without prejudice and with leave to amend if Jones can

cure the defects the Court has identified in this claim.

### 8.    Claims Against Defendant Hensley

Jones asserts that he reported a guard-on-inmate sexual assault to Defendant Hensley, the

Prison Rape Elimination Act Coordinator, but Hensley covered up the incident because it was

Jones who reported it.  (Doc. No. 5 at ¶ 11.)  "[A]n allegation of a failure to investigate, without

another recognizable constitutional right, is not sufficient to sustain a section 1983 claim."  *Graw

v. Fantasky*, 68 F. App'x 378, 383 (3d Cir. 2003) (quotations omitted); *see also Boseski v. N.

Arlington Municipality*, 621 F. App'x 131, 135 (3d Cir. 2015) (per curiam) ("Boseski has no

cognizable claim against a government entity for its failure to investigate or bring criminal

18

charges against another individual.").  Because Jones does not assert that he was personally harmed by Hensley's actions, this allegation also fails to state a plausible claim and will be dismissed with prejudice.

### 9.    Claims Against Defendant Murray

Jones alleges that former deputy superintendent John Murray labeled Jones a predator after he received a misconduct in 2011.  (Doc. No. 5 at ¶ 12.)  Murray's act allegedly resulted in Jones receiving impartial hearings on his claims that affected his inmate classification and liberty interests.[7]  (*Id.*)  The allegation against Murray is too vague and ambiguous for the Defendant to be expected to respond to it, because it never asserts *how* Murray's conduct impacted Jones's hearings, inmate classification, or liberty interests.  Accordingly, it fails to satisfy Federal Rule of Civil Procedure 8, which requires Jones to make "a short and plain statement" showing that Murray's alleged actions were unlawful and entitle him to relief.  *See Garrett*, 938 F.3d at 92 ("Conclusory allegations of liability are insufficient."); *Miller v. Schieler*, Civil Action No. 20-CV-138, 2020 WL 247716, at *3 (E.D. Pa. Jan. 15, 2020) (holding that "conclusory allegations" that prison officials treated the plaintiff "unfairly" did not satisfy Rule 8).  Therefore, it will be dismissed without prejudice, and we will grant Jones leave to amend so that he may attempt to cure this defect.

### 10.    Claims Asserting Supervisor Liability

Jones alleges that supervisory defendants Wetzel, Ferguson, Sorbu, Terra, Clark, Murray, Corenevich, Kelly, Hensley, and Sipple knew about the incidents he describes in the Amended Complaint and failed to act.  (Doc. No. 5 at ¶ 33.)  Jones alleges he spoke with Ferguson, Terra, Clark, Hensley and others about the issues related to his medical treatment and conditions,

---

[7] From context, it appears that Jones may have intended to allege that Murray's conduct *prevented* Jones from receiving impartial hearings.

placing those Defendants on notice of these issues, but they did nothing to help him.  (*See id.* ¶ 25.)  The claims against these Defendants, which are based on their supervisory positions at SCI-Phoenix or the Department of Corrections, are not a plausible basis for relief.

There are "two general ways in which a supervisor-defendant may be liable for unconstitutional acts undertaken by subordinates."  *Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 316 (3d Cir. 2014), *rev'd on other grounds by Taylor v. Barkes*, 575 U.S. 822 (2015).  First, a supervisor may be liable if he or she "with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm."  *Id.*  (quoting *A.M. ex rel. J.M.K. v. Luzerne Cty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004)) (alteration in original).  "Second, a supervisor may be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in the subordinate's unconstitutional conduct."  *Id.*

Jones fails to allege that the supervisor Defendants acted with deliberate indifference when they established or maintained a policy.  Jones makes no allegations that a policy existed, let alone how he was harmed by it.  He also fails to allege that any of the supervisor Defendants participated personally or directed others to violate his rights.  Although Jones does allege that the supervisor Defendants "acquiesced" in the underlying conduct, he provides no details about what specific conduct these supervisors purportedly ignored, when it happened, or how they knew about it.  (Doc. No. 5 at ¶ 33.)  As such, Jones's allegations of supervisor liability are not entitled to a presumption of truth, *see Santiago v. Warminster Twp.*, 629 F.3d 121, 132 (3d Cir. 2010) (under *Iqbal*, "a formulaic recitation of the elements of a supervisory liability claim . . . is not entitled to the assumption of truth"), and are "[c]onclusory allegations of liability [that are]

insufficient" under Rule 8, *see Garrett*, 938 F.3d at 92.  Because the Court cannot say at this time that Jones can never state a supervisor liability claim, this claim is dismissed without prejudice and Jones will be granted leave to amend this claim as well.

## III.   APPOINTMENT OF COUNSEL

In his Amended Complaint, Jones also moves for the appointment of counsel, which he says is "necessary and essential to the preservation of justice."  (Doc. No. 5 at ¶ 37.) Specifically, Jones avers that he requires appointment of counsel to assist with "preservation of critical documentation" and "access to any and all witnesses who may be relevant."  (*Id.*) Counsel, Jones says, could help him with the "complex" issues in this case, particularly those involving "the necessary expert witnesses."  (*Id.*)

After filing his Amended Complaint, Jones also filed a Motion for Appointment of Counsel.  (Doc. No. 16.)  In the motion, Jones asserts that he requires appointed counsel, reiterating many of the same reasons he had previously identified in his Amended Complaint. Jones states that he requires appointed counsel because this is a complex case which will require "expert witnesses," and because he is suffering "on-going injury."  (*Id.* at p. 1.)  He further argues that appointment of counsel will be helpful because he does not have the expertise to perform discovery, "Defendants will dispute" his version of events, and "his legal documents are being interfered with."  (*Id.* at p. 2.)

### A.     Standard of Review

"[I]ndigent civil litigants have no constitutional or statutory right to appointed counsel." *United States v. Evans*, Criminal Action No. 12-616-09, 2020 WL 6489013, at *1 (E.D. Pa. Nov. 4, 2020).  However, pursuant to 28 U.S.C. § 1915(e)(1), "[t]he court may request an attorney to represent any person unable to afford counsel."  The Third Circuit has created a two-step process

for courts to use when analyzing requests for appointment of counsel.  *Houser v. Folino*, 927 F.3d 693, 697 (3d Cir. 2019).  First, the Court "must consider as a threshold matter the merits of the plaintiff's claim."  *Id.* (quoting *Tabron v. Grace*, 6 F.3d 147, 155 (3d Cir. 1993)).  "If the . . . court determines that the plaintiff's claim has arguable merit in fact and law," the court should weigh additional factors bearing on the need for appointed counsel, including:

> (1) the plaintiff's ability to present his or her own case;
> (2) the complexity of the legal issues;
> (3) the degree to which factual investigation will be necessary and the ability of the plaintiff to pursue such investigation;
> (4) the amount a case is likely to turn on credibility determinations;
> (5) whether the case will require the testimony of expert witnesses; [and]
> (6) whether the plaintiff can attain and afford counsel on his own behalf.

*Id.* (first quoting *Tabron*, 6 F.3d at 155; and then quoting *Parham v. Johnson*, 126 F.3d 454, 457 (3d Cir. 1997)).  The decision to appoint counsel is "discretionary," and does not require a showing of "exceptional circumstances."  *Id.* at 698.

> **B.    Analysis**

For the reasons discussed above in Part II, we find that, at this stage, only Jones's deliberate indifference claims against Defendants Corenevich, Sorbu, and Terra have arguable merit in fact and law.[8]  Accordingly, we now analyze each *Tabron* factor with respect to these claims.  *See id.* at 697; *Evans*, 2020 WL 6489013 at *4.  We hold that, taken together, the *Tabron* factors weigh in favor of granting Jones's request for appointment of counsel.

First, Jones is able to present his own case.  He has filed "numerous *pro se* filings" in this case, *see Gordon v. Gonzalez*, 232 F. App'x 153, 157 (3d Cir. 2007), including an application to proceed *in forma pauperis* (Doc. No. 1), a Complaint (Doc. No. 2), an Amended Complaint (Doc. No. 5), a Motion for Injunctive Relief (Doc. No. 6), and a Motion for Appointment of

---

[8] In contrast and as discussed above, none of Jones's other claims have, at this time, arguable merit in fact and law.

Counsel (Doc. No. 16).  Taken together, these filings evince Jones's ability to present his own case.

Second, Jones's deliberate indifference case is legally complex.  As described above, Jones will be able to prove deliberate indifference if he can show that prison officials (1) knew of his "need for medical treatment but intentionally refuse[d] to provide it; (2) delay[ed] necessary medical treatment based on a non-medical reason; or (3) prevent[ed] [him] from receiving needed or recommended medical treatment." *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999).  While this is a relatively straightforward claim, the Third Circuit has counseled that "[s]implicity in the allegation supporting the claim does not translate into simplicity in the presentation of the claim." *Montgomery v. Pinchak*, 294 F.3d 492, 502 (3d Cir. 2002) (quoting *Parham*, 126 F.3d at 459) (alteration in original).  Jones's deliberate indifference claim will require him to present complicated medical evidence, so this factor weighs in favor of appointment of counsel.

Just as Jones's deliberate indifference claim is legally complex, it is also factually complex.  True, Jones will be required to perform only limited factual investigation, such as reviewing relevant documents and interviewing relevant witnesses.  Moreover, Jones has already identified in his Amended Complaint many of the documents he would need to obtain and witnesses he would need to interview in order to prove his claim.  (*See* Doc. No. 5 at ¶ 10 (discussing grievances related to medical care); *id.* at ¶ 30 (discussing a medical waiver and the actions of Defendants Corenevich, Sorbu, and Terra).)  However, on the other hand—and as discussed further below—Jones will almost certainly require expert testimony to prove his case. Accordingly, this factor weighs in favor of the appointment of counsel.

Fourth, it is unclear at this time how much of Jones's case will turn on credibility determinations. Defendants presumably will dispute Jones's version of events, and a fact finder will be required to determine which version it finds more credible. However, as the Defendants have not yet been served in this case, the Court cannot predict how they will proceed.[9] Therefore, this factor neither favors nor disfavors appointment of counsel.

Fifth, Jones will almost certainly require the testimony of expert witnesses in order to prove his case. As Jones notes in his Amended Complaint, he "does not know what long-term issues may result from missing [his cancer] treatments." (Doc. No. 5 at ¶ 30.) This is precisely the sort of situation the Third Circuit had in mind when it counseled that, unless "the seriousness of an injury or illness would be apparent to a lay person," expert testimony is necessary. *See Boring v. Kozakiewicz*, 833 F.2d 468, 473 (3d Cir. 1987). An injury caused by missed cancer treatments is not like a "broken leg[] or bullet wound[]" that would be obvious to anyone. *See Montgomery*, 294 F.3d at 504. It requires expert testimony. Accordingly, this factor, too, weighs in favor of appointment of counsel.

Lastly, we consider whether Jones can afford to retain counsel. Admittedly, there is reason to "question the independent weight of this factor . . . as indigent litigants by definition will almost always be able to satisfy it." *Gordon*, 232 F. App'x at 157. Nonetheless, we are bound by Third Circuit case law to consider it. Jones has averred that he cannot afford an

---

[9] Defendant Superintendent Jamie Sorber (identified as "Superintendent Sorbu" on the docket) has filed a response in opposition to Jones's Motion for Injunctive Relief. (Doc. No. 14.) In his Motion, Jones raised many of the same issues relating to his medical treatment that he identified in his Complaint. (*Compare* Doc. No. 6 at ¶ 4 (discussing Jones's allegedly botched cancer treatment), *with* Doc. No. 5 at ¶¶ 17–18 (discussing Jones's allegedly botched cancer treatment).) In her response to Jones's Motion, Sorber disputed Jones's legal contentions, but not his factual ones. (*See* Doc. No. 14 at pp. 14–15.) However, as Jones's motion did not specifically discuss his deliberate indifference claims against Sorber and co-Defendants Corenevich and Terra (the claims for which we are presently considering appointment of counsel), we cannot say whether Jones's assessment that "Defendants will dispute" his version of events is correct. (*See* Doc. No. 16 at p. 2.)

attorney.  (*See* Doc. No. 5 at ¶ 37.)  We have already granted him *in forma pauperis* status, and we have no reason to believe that, while unable to pay court fees, he is able to afford counsel. This factor also weighs in favor of appointment.

Because four of the *Tabron* factors weigh in favor of appointment of counsel, one weighs against it, and one neither favors nor disfavors it, Jones's motion for the appointment of counsel will be approved.

## IV.    CONCLUSION

All official capacity claims as well as claims based on grievances, claims seeking a transfer to a different prison, claims based on destruction of property, and the claim against Defendant Hensley based on a guard-on-inmate sexual assault involving a different inmate are dismissed with prejudice.  All other claims against all named Defendants except for the deliberate indifference claims against Defendants Corenevich, Sorbu, and Terra, are dismissed without prejudice and with leave to file a second amended complaint.  If Jones chooses not to file a second amended complaint, the Court will direct service only of the deliberate indifference claims against Defendants Corenevich, Sorbu, and Terra.

Additionally, because the bulk of the *Tabron* factors weigh in favor of appointment of counsel, Jones's motion for appointment of counsel is granted.

An appropriate Order follows.